**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**GAGE T. BROUGHTON** **PLAINTIFF**

**VS.** **No. 4:26-cv-00256 JM/PSH**

**FRANK BISIGNANO, Commissioner,**
**Social Security Administration** **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court Clerk within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

Plaintiff Gage T. Broughton ("Broughton") appeals the final decision of the Commissioner of the Social Security Administration (defendant "Bisignano") to deny his claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Broughton asserts three claims for relief: (1) the Administrative

Law Judge ("ALJ") failed to fully and fairly develop the record; (2) the ALJ erred at Step Two of the sequential evaluation; and (3) the ALJ erred in determining Broughton's residual functional capacity ("RFC") because the assessment was not supported by either examining or treating source opinion evidence, and the ALJ erred in relying upon vocational expert testimony which conflicted with the *Dictionary of Occupational Titles* and failed to comply with SSR 24-3p.

Bisignano contends substantial evidence supports the ALJ's decision that Broughton was not disabled during the relevant period. This statement is correct, and it is recommended that the ALJ's decision be affirmed and the case dismissed.

The parties ably summarized the medical records and the testimony given at the telephonic administrative hearing, which was conducted on November 20, 2024. (Tr. 36-65). The ALJ's decision was issued on February 14, 2025. (Tr. 11-35). The Court has carefully reviewed the record to determine whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from March 15, 2020, the alleged onset date, through February 14, 2025, the date of the ALJ's decision.

*The Administrative Hearing*

Following a brief opening statement by his attorney, Broughton responded to questions posed by the ALJ, describing his last work as restaurant work. Broughton

was 28 at the time of the hearing, 6’2” and weighed 136 pounds. He stated he lived in a house alone although his kids visit weekly. Broughton possessed a driver’s license but preferred not to drive. He estimated he had driven three times (brief drives) in the prior month. Broughton attended college for two years and stated he now has issue with reading and concentrating due to “being in pain.” (Tr. 44). Broughton estimated he could sit 45 before needing to stand and stretch and cannot walk very far (from the parking lot into a store tires him). Broughton did not use a cane or a walker. He stated the main reason he could no longer work was “chronic pain in my back just keeping me from being able to physically do much. (Tr. 45). He also cited exhaustion, resulting in him sleeping “more often that being awake.” *Id.* He testified to having at least one headache daily for the preceding month, with about twenty of them lasting an hour to hour and a half. Broughton said the frequency of the headaches increased since 2020, when he was having about five headaches a month. His efforts to find a preventative medication have been unsuccessful, and medication he took once the headache starts was discontinued when it caused nausea. He indicated he had not yet seen a neurologist or headache specialist. Broughton stated he had no emergency room visits for headaches in the past year.

Questioned by his attorney, Broughton testified his mother, grandmother, and brother take care of many chores around his house, including mowing the lawn, cleaning, and watching the children when they are with him.

His medications "make me pretty tired" and he quickly falls asleep without notice. He estimated he napped 60% of a typical day. He said his doctors ascribed his fatigue to an autoimmune disease and his medications.

The pain, according to Broughton, is in his lower back but spreads through his upper back, arms, and legs ("the pain is constantly radiating through my whole body"). (Tr. 50). Two injections for the pain were "not helping." *Id.* Neither were his medications ("not really"). (Tr. 51). Broughton described a loss of strength in his arms and hands and did not think he could use his hands in a work environment. Bad days, according to Broughton, were marked by a lack of movement with stiffness and pain, and the worst days he called someone to help him out of bed. He estimated the bad days occur every other week, sometimes more often, and last several days. He described hearing loss affecting his ability to hear certain pitches but not needing a hearing aid. He stated he turned up the volume on his phone and closely watched people's faces when they spoke. He said he had both light and sound sensitivity with his headaches. Mentally, not working has affected him and he cited problems being around people. A nurse practitioner managed his medications. He saw her monthly and was seeing a counselor weekly.

Zachariah Langley ("Langley"), a vocational expert, testified that Broughton's past relevant work as a kitchen helper (a composite job) was performed at the medium exertional level, and his past job as a material handler was a heavy exertional job. Langley stated a worker limited to medium work could perform other jobs in the national economy, such as kitchen helper, floor waxer, and hospital cleaner. The ALJ asked Langley to consider a hypothetical worker of Broughton's age, education, and experience, who could perform light work with the following restrictions: can occasionally climb ladders, ropes, or scaffolds, and occasionally stoop; can occasionally handle and finger with his non-dominant left extremity; can tolerate a light setting equivalent to an office setting; can tolerate a noise intensity level no greater than moderate; can occasionally have exposure to hazards; can carry out simple instructions and do unskilled work; can occasionally have interaction with the general public, co-workers, and supervisors; and can deal with occasional changes in a routine setting. Langley testified that such a hypothetical worker could not perform Broughton's past relevant work but could perform the jobs of investigator dealer accounts, sandwich board carrier and fruit distributor.

If the hypothetical question were altered in numerous ways (i.e., worker could sit and stand and needed to change positions every 45 minutes, worker could not deal with concrete variables, could not interact appropriately with supervisors, co-workers, or general public, could not respond to usual work situations or routine

work changes, would miss at least two days a month, need numerous unscheduled breaks, or be off-task at least 12% of the work day), Langley stated jobs were unavailable. (Tr. 58-64).

*The ALJ's Decision*

The ALJ determined Broughton had severe impairments of fibromyalgia, spina bifida, migraines, chronic pain, anxiety, and depression. The ALJ found Broughton did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. The ALJ specifically addressed whether Broughton met Listings 1.00, 11.00, 12.00, 12.04, and 12.06. As part of the analysis of mental impairments, the ALJ considered the "paragraph B" criteria, rating Broughton in four broad areas of functioning, finding he had: (1) a mild limitation in understanding, remembering or applying information; (2) a moderate limitation in interacting with others; (3) a moderate limitation with regard to concentrating, persisting or maintaining pace; and (4) a mild limitation in adapting or managing oneself. Since Broughton was not markedly limited in two of these areas, or extremely limited in one area, the "paragraph B" criteria were not satisfied. The ALJ also found the "paragraph C" criteria were not met.

The ALJ determined Broughton had the RFC to perform light work with the

restrictions which mirrored those in the primary hypothetical question posed to Langley.

In making these findings, the ALJ considered Broughton's complete medical history, beginning with complaints of back and knee pain in spring 2020. The ALJ cited fifteen providers who treated Broughton. A lumber MRI in March 2021 was noted. In 2022, Broughton had ear surgery, which was noted to be healing well in early 2023.

The ALJ noted treatment by neurologist Dr. Johnathan Reding ("Reding") in 2022. Reding prescribed physical therapy and home exercises. Broughton was being seen for pain management in 2022, reporting limited relief from steroid injections and branch blocks.

The ALJ also cited treatment in the fall of 2022 by rheumatologist Dr. Noha Mohamed ("Mohamed") for head, neck, low back, foot, and joint pain. Mohamed diagnosed fibromyalgia. In the summer of 2023, Broughton had a normal head CT. In the spring and summer of 2024, he was seen for headaches and assessed with grip strength of 4/5 with a normal gait. Broughton had numerous normal head CTs in 2024. He also reported to his primary care physician in 2024 that he had been off all prescribed medications for about a year, instead relying on medical marijuana and over-the-counter treatments.

The ALJ also reviewed Broughton's treatment for depression and anxiety during the relevant period. This treatment included care provided by Dr. Maggie James ("James") beginning in 2021, and treatment by APRN Tana Allen ("Allen") in 2024.

The ALJ addressed Broughton's activities of daily living and his testimony at the hearing. The ALJ determined Broughton's impairments could reasonably be expected to cause his symptoms. However, the ALJ found his statements regarding the intensity, persistence and limiting effects were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 23).

The ALJ considered the numerous medical opinions. At the state agency and reconsideration levels, the ALJ found the opinions unpersuasive, albeit for different reasons. With regard to the physical abilities Dr. Prianka Gerrish (agency) and Dr. Kristin Jarrard (reconsideration) opined Broughton could perform medium work, and the ALJ deemed him capable of light work with restrictions. As for mental capabilities, Dr. Julie Wood (agency) and Dr. Diane Kogut (reconsideration) opined Broughton had only mild limitations while the ALJ found him moderately limited in some mental areas of functioning.

APRN Dalana Rice's 2023 findings following a consultative physical examination were somewhat persuasive, with the ALJ noting that objective imaging

results did not support Rice's moderate to severe limitations. Consultative examiner Dr. Don Ott's 2023 report was also somewhat persuasive, with the ALJ agreeing with Dr. Ott that Broughton's mental status was influenced by pain.

Citing a lack of objective evidence, the ALJ found APRN Hannah Jones' 2024 opinion unpersuasive. Finally, the ALJ deemed the 2024 report of Dr. Maggie James unpersuasive "as the provider did not provide any objective evidence for support and the opinion is inconsistent with her own treatment notes which show good response and progress with treatment." (Tr. 25).

After finding Broughton could not perform his past relevant work, the ALJ relied on the testimony of Langley to conclude Broughton could perform the jobs of investigator dealer accounts, sandwich board carrier, and fruit distributor. As a result, the ALJ found Broughton was not disabled.

*Claim One -- Failure to fully and fairly develop the record*

In a pre-hearing memorandum, Broughton requested additional consultative examinations be conducted, arguing there had been "no development of examining source opinion evidence." (Tr. 391, 395). This request was denied, and he renews this argument in contending the ALJ failed to fully and fairly develop the record. This argument lacks merit. Bisignano correctly describes the ALJ's duty is to "develop a reasonably complete record." *See Clark v. Shalala*, 28 F.3d 828, 830-

831 (8th Cir. 1994). Also, Broughton bears the burden of proof to prove disability. *See Thomas v. Sullivan*, 928 F.2d 255 (8th Cir. 1991). And the pertinent regulations provide that consultative examinations at government expense are discretionary and required only when necessary to enable the ALJ to make a disability determination. *See* 20 C.F.R. §§ 416.917, 416.919a(a).

Here, as previously detailed, the ALJ was supplied with eight opinions from medical professionals. These opinions spanned the relevant period, with two offered in 2024 prior to the expiration of the relevant period in February 2025. This is not an instance where the opinions given to the ALJ were outdated and left the ALJ uninformed. *See Kendrick v. Commissioner*, Case No. 4:24-cv-221 (all opinion evidence predated critical objective MRI findings). The *Kendrick* decision stressed that an ALJ must obtain "a modicum of RFC opinion evidence." The ALJ has complied with this requirement, and she was not obligated to do more than she did under these circumstances.

*Claim Two -- the ALJ erred at Step Two of the sequential evaluation*

At Step Two, the ALJ determined that Broughton had six severe impairments. In many cases, the ALJ will also list impairments which were present but were non-severe. Here, the ALJ did not list non-severe impairments. Broughton argues that this constitutes reversible error because there were impairments that were not

discussed which should have been deemed severe. Broughton cites to his prehearing memoranda and an extensive list of roughly thirty-five impairments he claims should have been deemed severe. *See* Doc. No. 6, page 12. Broughton narrows this list a bit and now cites the following as impairments that should have been deemed severe: systemic lupus erythematosus; polyarticular psoriatic arthritis; cervical facet joint syndrome with cervical radiculopathy; hearing loss; involuntary weight loss; fatigue; malaise; bilateral hand impairment; and PTSD.

That the ALJ did not list some or all of the alleged impairments as severe, or discuss them as non-severe, is not fatal to her decision. While more discussion of non-severe impairments may be preferred, the ALJ's duty at Step Two is to identify the *severe* impairments, which she did. After identifying these impairments, the ALJ assessed Broughton with the ability to perform light work with numerous restrictions. In reaching this RFC, the ALJ considered the "entire record" and "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 19). This complied with the regulations. *See* 20 C.F.R. § 404.1545(a)(2).

Broughton's argument fails even if one or more of the alleged impairments should have been included among the severe impairments. This is so because Broughton fails to demonstrate that the inclusion of an additional impairments(s) would have resulted in a meaningful change in the already restrictive RFC reached

by the ALJ.

*Claim Three -- the ALJ erred in determining Broughton's residual functional capacity ("RFC") because the assessment was not supported by either examining or treating source opinion evidence, and the ALJ erred in relying upon vocational expert testimony which conflicted with the Dictionary of Occupational Titles and failed to comply with SSR 24-3p.*

Claim three consists of two separate claims. First, Broughton faults the RFC as not being supported by either examining or treating source opinion evidence. This issue was addressed, in part, in Broughton's first claim, where he contended that the record was not fully developed and additional medical opinions were needed. The flaw with this argument is the notion that the ALJ must choose between any single medical opinion, be it from a treating or examining or consultative source, and adopt it as his own. However, the RFC need not mirror the findings of any one physician, as the ALJ is not bound to choose any one physician and adopt his/her findings as the appropriate RFC. Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The record here was adequate, with ample records from treating sources and ample opinions from various

sources.[1] The ALJ did not err in surveying the entire record and reaching his RFC.

Broughton last argues the ALJ erred in relying upon vocational expert testimony which conflicted with the Dictionary of Occupational Titles and failed to comply with SSR 24-3p. Langley, the vocational expert, testified the hypothetical worker could perform the job of investigator dealer accounts. Langley described the job as performed at the light exertional level with an SVP[2] of 2, testifying that 57,000 of these jobs were available in the national economy. (Tr. 61). Counsel for Broughton asked Langley what reasoning level was required by this job. The ALJ responded, "I'll let you answer but I do need to put in here that per regulation and policy, SSA defines skill levels as unskilled, semi-skilled, or skilled, and Social Security within these RFCs does not use these reasoning levels, but you may answer, Mr. Langley." (Tr. 61). Langley stated the reasoning level would be 4. He also testified his testimony did not conflict with the DOT.

---

[1] Broughton also argues generally the ALJ failed to comply with the relevant regulations. At a minimum the ALJ must address each opinion's supportability and consistency. 20 C.F.R. § 416.920c(a), (c). Supportability is whether the opinion is supported by objective medical evidence and by the source's own explanation of the opinion. Consistency is whether the opinion is consistent with the other medical evidence in the record. 20 C.F.R. § 416.920c(c). Broughton cites the opinions of Jones, James, and Rice. The ALJ fulfilled his duty to examine the supportability and consistency of these opinions.

[2] SVP stands for specific vocation preparation, a measurement of the time required for a worker to learn to perform the job in an average manner. SVP 2 translates to anything beyond short demonstration up and including 1 month.

After the hearing, the ALJ submitted an interrogatory to Langley seeking confirmation of the jobs he cited and the sources he used. In response, Langley confirmed his testimony that the hypothetical worker described by the ALJ could not perform Broughton's past relevant work but could perform the jobs of investigator dealer accounts, sandwich board carrier, and fruit distributor. (Tr. 412-414). Langley identified the sources he used to obtain these jobs as the DOT and SkillTran Job Browser Pro.[3]

Broughton's quarrels with Langley's hearing testimony were voiced at the time. It remains, however, that Langley testified that Broughton was capable of performing the unskilled job of investigator dealer accounts. Langley testified at the time that this was consistent with the DOT. He reaffirmed this in his response to the interrogatory posed after the hearing. Broughton does not demonstrate a conflict with the DOT as much as contend that the underlying mental RFC was in error because it was not based upon adequate opinion evidence. But any dispute over the opinion evidence has already been addressed. The RFC was proper.

In addition, there was no error in failing to comply with SSR 24-3p. This regulation continues to recognize the DOT as a reliable source of vocational information while allowing vocational experts to use additional sources. Here,

[3] SkillTran Job Browser Pro is described as an intermediate-level software and web service used by vocational experts, rehabilitation counselors, and forensic economists.

Langley's reference to SkillTran Job Browser Pro was allowed. This is decidedly so when Langley noted that the two sources use the same definitions. (Tr. 413). In summary, the expert's testimony was not in conflict with the DOT and not a violation of the relevant regulation.

*Conclusion*

In summary, substantial evidence supports the determination reached by the ALJ. Many of Broughton's claims are rooted in his view that the ALJ needed more opinion evidence or erred in assessing the numerous opinions in the record. But these findings were supported by substantial evidence. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is amply satisfied in this case.

Therefore, it is recommended that the final decision of Bisignano be affirmed and Broughton's complaint be dismissed with prejudice.

IT IS SO ORDERED this 22nd day of October, 2026.

UNITED STATES MAGISTRATE JUDGE